(156 App. Div. 597.)

## MILLS v. LELAND et al.

(Supreme Court, Appellate Division, First Department. May 16, 1913.)

INJUNCTION (§ 215*)—VIOLATION AND PUNISHMENT—PROCEEDINGS.

A judgment in an action for a mandatory injunction, requiring defendant within 30 days to remove certain projections from a building which encroached on plaintiff's property was one not enforceable by execution, and therefore to be enforced under Code Civ. Proc. § 1241, after service upon the party against whom it ran if he refused or neglected to obey it, by punishment for contempt; and hence, although it provided that, if defendant failed to comply therewith, plaintiff might remove the encroachments at defendant's expense, plaintiff could not, without application to the court, determine for herself that defendant was in default, and proceed to remove the encroachment at the expense of defendant, especially where such expense was incurred by her within 30 days after service of the judgment, although more than 30 days after its rendition.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 438; Dec. Dig. § 215.*]

Appeal from Special Term, New York County.

Action by Harriet A. R. Mills against Francis L. Leland and others for a mandatory injunction to compel the removal of encroachments. From an order granting a motion by plaintiff that she be allowed the expense incurred in removing certain of the encroachments, defendants appeal. Reversed, and motion denied.

See, also, 153 App. Div. 892, 137 N. Y. Supp. 1130.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

L. Laflin Kellogg, of New York City, for appellants.

Joab. H. Banton, of New York City, for respondent.

SCOTT, J. This action was brought in equity to obtain a mandatory injunction requiring the defendants, owners of a building adjoining one belonging to plaintiff, to remove part of a cornice and certain ornamental belt courses and sills which overhung plaintiff's premises. The action resulted in a judgment requiring the removal of the objectionable projections. The judgment, among other things, provided as follows:

"Further ordered, adjudged, and decreed that the defendants Francis L. Leland and Frank R. Leland be, and they hereby are, ordered to remove each and every of the cornices, copings, moldings, and other projections extending south of the south line of the property hereinbefore described and over the property of the plaintiff, within thirty (30) days after the entry of the judgment herein, and without injury to the property of the plaintiff.

"It is further ordered, adjudged, and decreed, in event of the failure or refusal of the defendants Francis L. Leland and Frank R. Leland to comply

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

with the foregoing portions of the decree of this court, ordering the removal of each and every of the cornices, copings, moldings, window sills, ornaments, and other projections extending south of the south line of the property hereinbefore described, and over the property of the plaintiff, that the plaintiff should be permitted to remove the same, or any part thereof, and charge the expense of such removal to the defendants Francis L. Leland and Frank R. Leland."

It also contained the clause frequently inserted in equity judgments, as follows:

"It is further ordered, adjudged, and decreed that plaintiff have leave to apply at the foot of the decree for any relief necessary or proper to carry this decree into effect."

The judgment was signed on June 29, 1912, and entered on July 12, 1912. A copy of the judgment was served on the defendants' attorney on July 19, 1912, and on one of the defendants on July 27, 1912. The defendants promptly employed an architect, who completed plans for the work on August 4, 1912, and on August 6, 1912, applied to the department of buildings for a permit to do the work, which was granted on August 9th. A contractor was thereupon employed, who proceeded to remove the objectionable part of the cornice, and then undertook to drop swinging ladders or platforms from the roof to cut off the other projections. In the meantime, however, the plaintiff, undertaking to determine for herself that defendants were in default, had employed a contractor to cut away the offending projections. He had erected a scaffolding arising from the ground, which prevented the use of the swinging scaffolds which defendants' contractor desired to use. Plaintiff and her contractor refused either to remove their scaffold, or to permit defendants' contractor to use it, so that it was impossible for defendants to proceed with the removal of the encroachments. The undisputed statement is made that, if plaintiff had been permitted to proceed, the whole work of removal could have been completed by August 26th. The controversy between the two contractors as to which should complete the work reached an acute stage, calling at times for the interference of the police to preserve order.

On August 23, 1912, defendants moved upon an order to show cause for an extension of the time to complete the work; the order containing a stay of further operations upon the part of plaintiff. This motion was argued on August 27th, and denied by an order entered on August 29th. An appeal was taken by defendants to this court, but was dismissed upon motion of the plaintiff upon November 12, 1912, upon a suggestion that the work had been wholly completed and that the question whether defendants' time to complete it should be extended had become academic.

The real question in this case is as to the regularity of plaintiff's proceedings. Her claim is that the defendants' time to comply with the judgment expired on August 12, 1912, 30 days after the judgment had been entered, and that she had the right then, without any further application to the court, to proceed to do the work herself and to charge the expense to defendants, enforcing the payment by the pro-

ceeding now under review. It is true that the judgment in terms requires the work to be performed "within 30 days after the entry of the judgment," and authorizes plaintiff, upon defendants' default, to do the work herself; but these provisions must be read in the light of the provisions of the Code of Civil Procedure. The judgment required the defendants to do a specific thing, to wit, to remove certain physical encroachments upon the plaintiff's property. It was clearly not such a judgment as could be enforced by execution, and is therefore one provided for in section 1241, Code of Civil Procedure, to be enforced, after service upon the party against whom it runs, if he refuses or neglects to obey it, by punishing him for a contempt of court. It was necessary, therefore, before plaintiff was in a position to specifically enforce the judgment, that she should serve it, and should apply to the court for its enforcement.

It is unnecessary to consider whether service of the judgment upon the attorney for the defendants would have been sufficient to set the time for performance running; the point being that proceedings for punishment for failure to perform could only be begun by application to the court upon notice to defendants or their attorney (Pitt v. Davison, 37 N. Y. 235), which course was not adopted. This proceeding, although plaintiff is careful not to so denominate it, is in effect an attempt to punish defendants, as for a contempt, for not complying with the judgment as plaintiff construes it. In our opinion, the plaintiff had no right to determine for herself the fact of defendants' default. That was a matter to be determined by the court, upon due notice to defendants, who might have been able to show that they had proceeded with due diligence, or that their obedience to the judgment had been prevented by plaintiff herself.

Plaintiff was therefore premature in assuming that defendants were in default, and must herself bear the expense to which she went upon such premature assumption. Upon the view most favorable to the plaintiff, defendants were not in default until 30 days after service of the judgment on their attorney, which would have been August 18, 1912. Plaintiff incurred the expense she now seeks to recover before that date.

The order appealed from must be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.